IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No. 5:20-cr-00204-M-1

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | **OPINION** |
| | ) | **AND ORDER** |
| MICHAEL GAVIN OCHOA, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on Defendant's motion to suppress, filed March 15, 2021. [DE-33] For the reasons that follow, Defendant's motion is DENIED.

**I.     Background**

The evidence introduced by the parties, including both witness testimony and video evidence, demonstrates the following: on the afternoon of July 18, 2019, Officer N.D. Budden of the Fayetteville Police Department (the "FPD") was on patrol when he saw a gray Chrysler 300 that matched the description of a vehicle that law-enforcement officers had been looking for since 2018 because of information that the vehicle might have been involved in illegal drug activity. After following the vehicle for some time, Budden pulled the vehicle over based upon suspicion that the vehicle's windows were illegally tinted in violation of N.C. Gen. Stat. § 20-127.[1] The vehicle was driven by Defendant.

---

[1] N.C. Gen. Stat. § 20-127(b)(1) sets forth:

> The total light transmission of the tinted window shall be at least thirty-five percent (35%). A vehicle window that, by use of a light meter approved by the Commissioner [of the Division of Motor Vehicles], measures a total light transmission of more than thirty-two percent (32%) is conclusively presumed to meet this restriction.

1

At the time that he initiated the traffic stop, Budden estimated that the vehicle's windows allowed 25% light transmission and were therefore not compliant with N.C. Gen. Stat. § 20-127(b)(1)'s 35% transmission requirement. Ultimately, the windows were tested by a light meter as allowing 37% light transmission, and were therefore shown to comply with N.C. Gen. Stat. § 20-127.

The record is less than clear regarding what happened next, although it appears undisputed that certain information that Budden obtained during the traffic stop was used to obtain a warrant to search Defendant's residence, where law enforcement discovered the drugs and firearm that Defendant was indicted for possessing in this matter. [*see* DE-33 at 2 (Defendant's motion stating that "[d]uring the course of the traffic stop Officer Budden acquired information that he would later present to a magistrate who subsequently issued a search warrant for Mr. Ochoa's house. The search of Mr. Ochoa's residence led to the charges in this matter."); DE-38 at 3–6 (Government response)] It is the unspecified information acquired by Budden during the traffic stop that is the object of Defendant' motion to suppress. [DE-33 at 2 ("Mr. Ochoa prays this Court to suppress the evidence gleaned from the traffic stop that was then used to support the search warrant.")]

Following briefing by the parties [DE-33; DE-38], the court held a hearing on Defendant's motion on April 27, 2021 [DE-39–41]. This order follows.

## II. Legal standard

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. This generally requires law-enforcement officers to seek a warrant from an impartial judicial officer before searching or seizing "persons, houses, papers, [or] effects[.]" *Id.* However, "the ultimate touchstone of the Fourth Amendment is 'reasonableness,'" *Brigham City v. Stuart*, 547 U.S.

398, 403 (2006), and the Fourth Amendment prohibits only unreasonable searches and seizures. If a search or seizure falls within one of the historic exceptions to the warrant requirement, it is reasonable for Fourth Amendment purposes even when it is conducted without a warrant. *See United States v. Brown*, 701 F.3d 120, 126 (4th Cir. 2012) ("When the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search or seizure is objectively reasonable under the Fourth Amendment, police officers are entitled to bypass the warrant requirement." (internal quotation marks, brackets, and citation omitted)). If a warrantless search or seizure does not fall within one of the exceptions, it is unreasonable for Fourth Amendment purposes, *see United States v. Richardson*, 607 F.3d 357, 364 (4th Cir. 2010) ("But for a few exceptions, warrantless searches and seizures are *per se* unreasonable." (internal quotation marks and citation omitted)), and the exclusionary rule may require suppression of evidence obtained as a result of the search or seizure, *see generally United States v. Leon*, 468 U.S. 897 (1984) (discussing exclusionary rule).

The Supreme Court has recognized exceptions to the warrant requirement that apply when it is not practicable for law-enforcement officers to obtain a warrant before engaging in certain legitimate law-enforcement activity. In *Terry v. Ohio*, 392 U.S. 1 (1967), the Court held that law-enforcement officers may—without a warrant—briefly seize a person and frisk him for weapons when the officer reasonably suspects that the person has engaged, is engaged, or will be engaged in criminal activity. *Id.* at 30. Since *Terry*, the so-called reasonable-suspicion standard has been applied in various other contexts, including where law-enforcement officers stop vehicles based upon suspicion that their drivers have violated traffic laws. *See Kansas v. Glover*, 140 S. Ct. 1183, 1187 (2020) ("Under this Court's precedents, the Fourth Amendment permits an officer to initiate a brief investigative traffic stop when he has a particularized and objective basis for suspecting the particular person stopped of criminal activity." (internal quotation marks and citations omitted)). When a law-enforcement officer has reasonable suspicion that the driver of a

vehicle has violated traffic laws, the officer may stop the vehicle to investigate. *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) ("A seizure for a traffic violation justifies a police investigation of that violation.").

The Fourth Circuit recently stated:

> A traffic stop constitutes a seizure under the Fourth Amendment and thus must be justified by reasonable suspicion of criminal activity or some other exception to the generally applicable warrant requirement. . . .
>
> Reasonable suspicion to initiate a brief investigative traffic stop requires a particularized and objective basis for suspecting the particular person stopped of criminal activity. Although it is a commonsense, nontechnical standard, to support a finding of reasonable suspicion the detaining officer must either articulate why a particular behavior is suspicious or logically demonstrate, given the surrounding circumstances, that the behavior is likely to be indicative of some more sinister activity than may appear at first glance. In practice, this typically means that an officer's articulated facts must in their totality serve to eliminate a substantial portion of innocent travelers before reasonable suspicion will exist.

*United States v. Feliciana*, 974 F.3d 519, 522–23 (4th Cir. 2020) (internal quotation marks, brackets, ellipsis, and citations omitted). The Supreme Court has made clear that "[t]he reasonable suspicion inquiry falls considerably short of 51% accuracy, for, as we have explained, to be reasonable is not to be perfect[.]" *Glover*, 140 S. Ct. at 1188 (internal quotation marks, brackets, and citations omitted). And the *Feliciana* court also said that "[o]fficers often base their suspicion in part on their practical experience and specialized knowledge, which we credit when assessing the constitutionality of their actions." *Id.* at 525.

When a defendant challenges a warrantless stop of his vehicle, the Government bears the burden of proving by a preponderance of the evidence that the stop was not unreasonable within the meaning of the Fourth Amendment. *See United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001) ("When the government searches or seizes a defendant without a warrant, the government bears the burden of proving, by a preponderance of the evidence, that the search or seizure was constitutional.").

4

## III. Analysis

Defendant has moved the court "to suppress any and all evidence obtained as a result of his seizure during an unconstitutional traffic stop on July 18, 2019[,]"[2] presenting the lone question for the court's determination as follows:

> The issue presented is whether Officer Budden had a reasonable belief that a de minimums [sic] traffic violation had occurred and therefore had sufficient probable cause to sustain a seizure under the Fourth Amendment of the United States Constitution in light of the fact that his opinion was uncorroborated, mistaken and contained no additional indicia of reliability.

[DE-33 at 1, 3] Defendant bases his argument primarily upon the Fourth Circuit's decision in *United States v. Sowards*, 690 F.3d 583 (4th Cir. 2012). The question in *Sowards* was whether a law-enforcement officer's visual estimate that a vehicle was speeding at 75 miles per hour in an area where the posted speed limit was 70 miles per hour was sufficient to support probable cause to stop the vehicle to issue a citation. The *Sowards* court held:

> [W]here an officer estimates that a vehicle is traveling in only slight excess of the legal speed limit, and particularly where the alleged violation is at a speed differential difficult for the naked eye to discern, an officer's visual speed estimate requires additional indicia of reliability to support probable cause. . . . The reasonableness of an officer's visual

---

[2] The record does not reflect what information was obtained during the challenged traffic stop, and Defendant does not specify what the specific evidence sought to be suppressed actually is. While the court's conclusion that Budden's reasonable suspicion justified his investigative traffic stop renders these considerations immaterial for purposes of the instant motion, Defendant's failure to specify could be a basis upon which to deny Defendant's motion, were the court inclined to rule in his favor. *See United States v. Maldonado*, 42 F.3d 906, 910 (5th Cir. 1995) (applying plain-error review for unpreserved error where defendant did not sufficiently specify the evidence sought to be suppressed: "In his motion to suppress, Maldonado sought, among other things, suppression of 'illegal contraband'. The motion provided only very general statements in support, asserting in part that 'contraband found on' Maldonado was 'the product of an illegal stop, arrest, search and seizure.' . . . [E]ven assuming that Maldonado's lawyer was raising [the issue], these comments did not present the issue to the district court with sufficient specificity.").

The court also notes that the Government has not made any arguments regarding the intervening warrant that issued before the search that ultimately led to Defendant's indictment, or to specify the evidence based upon which the warrant issued. While the court's conclusion also renders these considerations immaterial for purposes of Defendant's motion, such considerations could be potentially dispositive of motions to suppress in certain circumstances, *see Leon*, 468 U.S. at 922 ("the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion"), and the Government should raise them at its first opportunity when they are in play.

5

> estimate that a vehicle is traveling in slight excess of the legal speed limit may be supported by radar, pacing methods, or other indicia of reliability that establish, in the totality of the circumstances, the reasonableness of the officer's visual speed estimate. . . . Such additional indicia of reliability need not require great exactions of time and mathematical skill that an officer may not have, but they do require some factual circumstance that supports a reasonable belief that a traffic violation has occurred. In the absence of sufficient additional indicia of reliability, an officer's visual approximation that a vehicle is traveling in slight excess of the legal speed limit is a guess that is merely conclusory and which lacks the necessary factual foundation to provide an officer with reasonably trustworthy information to initiate a traffic stop.

*Id.* at 592–93. The *Sowards* court held that for a number of reasons—including (1) the difficulty the naked eye has discerning slight variations in the speeds of fast-moving vehicles and (2) the observing officer's testimony, which demonstrated that he had fundamental difficulties in understanding the distances that he used to estimate the defendant's speed—the Government had failed to establish that the officer had probable cause to stop the vehicle there at issue, and reversed the district court's denial of the defendant's motion to suppress evidence recovered as a result of the stop. *Id.* at 587–97. Defendant invites the court to extend *Sowards* to this case, arguing that the two cases are sufficiently analogous that *Sowards* requires that the stop of Defendant's vehicle be deemed unreasonable within the meaning of the Fourth Amendment because Budden's estimation that Defendant's vehicle's windows were illegally tinted was not supported by "additional indicia of reliability[.]" [*see generally* DE-33]

For several reasons, the court declines Defendant's invitation. First of all, *Sowards* involved different facts that implicate a different legal standard than the standard applicable in this case. As the Government points out in its brief [DE-38 at 6 n.2], Defendant incorrectly suggests that Budden had to have probable cause to stop Defendant's vehicle [*see generally* DE-33]. Although the *Sowards* court focused upon the probable-cause standard, at issue in that case was whether the officer was justified in stopping the vehicle to issue a citation for an observed and already-completed violation of the speed limit. *Sowards* was not concerned with when officers are justified in stopping vehicles to investigate suspected and ongoing violations of other traffic laws. *See Sowards*, 690 F.3d at 585 n.1 ("Sowards also challenged, among other

6

things, the open-air dog sniff on the basis that the officers lacked the necessary reasonable suspicion that illegal activity was afoot to continue his detention beyond the time required to issue a traffic citation. Because our disposition rests on Deputy Elliott's lack of probable cause to initiate the traffic stop in the first place, we need not reach these issues[.]").

Except for in extraordinary circumstances present in neither *Sowards* nor this case, once a traffic stop based upon an observed speeding violation has been effectuated, the stopped vehicle will neither be presently violating any speed limit nor contain evidence of the speed at which it was traveling prior to the initiation of the stop. Because of these facts, a warrantless seizure *to investigate* an observed speeding violation would be so unlikely to discover new evidence of the vehicle's previous speed that it would be unreasonable within the meaning of the Fourth Amendment. *See Knowles v. Iowa*, 525 U.S. 113, 118 (1998) ("Once Knowles was stopped for speeding and issued a citation, all the evidence necessary to prosecute that offense had been obtained. No further evidence of excessive speed was going to be found either on the person of the offender or in the passenger compartment of the car."). For this reason, law-enforcement officers use radar equipment and pacing methods to confirm their suspicions that a vehicle is speeding prior to stopping the vehicle, and rather than to investigate, the purpose of a speeding-based traffic stop is merely *to issue a citation*. Where an officer initiates a traffic stop to merely issue a citation for an observed violation of traffic laws, the officer may only do so where he has probable cause. *Sowards*, 690 F.3d at 592 (observed speeding); *Whren v. United States*, 517 U.S. 806, 810 (1996) (observed illegal turns and speeding: "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred").

On the other hand, because the windows of a vehicle will have the same tint prior to and after the effectuation of a traffic stop, a warrantless seizure to investigate a window-tint offense is fundamentally different and may be reasonable for Fourth Amendment purposes. There is no widely-available technology

7

or generally accepted method that allows law-enforcement officers to reliably measure a moving vehicle's windows' light-transmission percentage (at least of which Defendant has made the court aware). Accordingly, a traffic stop based upon a suspected window-tint violation is intended to allow officers to safely and reliably investigate whether the vehicle is in compliance with the applicable window-tint laws, rather than to merely issue a citation. The Supreme Court and Fourth Circuit in cases subsequent to *Sowards* have made clear that when a court adjudges the reasonableness of a traffic stop effectuated to facilitate the investigation of suspected traffic violations—i.e., to discover evidence of a traffic violation, as opposed to a stop to issue a citation for, e.g., speeding—*Terry*'s reasonable-suspicion standard applies. *See Heien v. North Carolina*, 574 U.S. 54, 60 (2014) ("A traffic stop for a suspected violation of law is a seizure of the occupants of the vehicle . . . to justify this type of seizure, officers need only reasonable suspicion—that is, a particularized and objective basis for suspecting the particular person stopped of breaking the law." (internal quotation marks and citations omitted)); *Glover*, 140 S. Ct. at 1187 (officer knew vehicle's owner had revoked driver's license but did not know whether the owner was the driver of the vehicle when observed (citing *Terry*)); *Feliciana*, 974 F.3d at 522–23 (commercial vehicle suspected of being driven without permit where one was required (citing *Glover*)).

"'[R]easonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). Because *Sowards* concerned the more-demanding probable-cause standard, *Sowards* is inapposite here, and does not stand for the proposition that an officer who visually estimates that a vehicle may be noncompliant with a window-tint law like N.C. Gen. Stat. § 20-127 cannot stop the vehicle to investigate without additional indicia that his estimation is reliable.

Second, the Fourth Circuit has never followed *Sowards*, and has distinguished *Sowards* in the three opinions in which it has been discussed. In the first of those cases (and the only case for which the opinion

8

was published), which concerned a traffic stop to issue a citation for speeding—and thus squarely implicated *Sowards* and the probable-cause standard—the Fourth Circuit declined to follow *Sowards* where (1) two officers visually estimated that the defendant was speeding (rather than the one in *Sowards*) and (2) neither of the officers had given any reason to doubt their ability to visually estimate speed (unlike the officer in *Sowards*). *United States v. Mubdi*, 691 F.3d 334, 340–41 (4th Cir. 2012), *vacated on other grounds*, 570 U.S. 913 (2013). In another case, which concerned a traffic stop to issue a citation for an observed violation of a South Carolina law requiring drivers to maintain a certain distance from a vehicle in front of them—an offense for which post-stop investigation would be as unreasonable as post-stop investigation of speeding, and which therefore also implicated the probable-cause standard—the Fourth Circuit distinguished *Sowards* for essentially the same reasons. *United States v. Brown*, 536 F. App'x 376, 379 (4th Cir. 2013) (unpublished) ("the officers actually saw the distance between Austin's SUV and the vehicle in front of him as they traveled parallel to it in a different lane. The record contains no facts that cast doubt on the accuracy of the deputies' observations. Accordingly, we affirm the district court's conclusion that the traffic stop was supported by probable cause."). And in the remaining case, *United States v. Jones*, 500 F. App'x 216 (4th Cir. 2012) (unpublished *per curiam*), the Fourth Circuit declined to follow *Sowards* in the window-tint context, based upon similar considerations:

> We decline Jones' invitation to extend Sowards to this case. In our view, Jones' case is more analogous to our decision in [*Mubdi*], in which we explained that a traffic stop was properly supported by probable cause where an officer's visual speed estimate was corroborated by a second officer's almost identical visual speed estimate. We held that "this tandem evidence alone provides sufficient corroboration to support a finding of probable cause, particularly where the record — unlike the one in Sowards — does not cast a shred of doubt on the officers' ability to estimate speed or on the accuracy of their visual estimates."
>
> Here, likewise, the detaining officers' visual estimate that Jones' windows were illegally tinted was corroborated by a second officer. Nor does the record demonstrate any reason to doubt either officers' ability to estimate window tint with a reasonable degree of accuracy. Nor can we conclude that the district court clearly erred in finding, upon a review

9

> of the relevant video footage, that Jones' windows "did in fact appear to be dark" and were "dark enough" for the officers to "check out."
>
> We therefore conclude that the district court did not clearly err in crediting the officers' assertions that they reasonably believed, based on objective circumstances known to them at the time of the stop, that Jones' windows were potentially illegally tinted. Because the "cumulative information available" to the officers sufficed to give them reasonable, articulable suspicion amounting to more than merely an "inchoate hunch" that Jones was engaged in criminality at the time of his detention, we decline to disturb the district court's suppression ruling.

*Id.* at 218 (internal ellipses and citations omitted) (affirming the denial of the defendant's motion to suppress). That the Fourth Circuit has never followed *Sowards* (1) where the officer at issue did not need probable cause or (2) in the window-tint context weighs against extending *Sowards* in this case.

It is true that the two considerations upon which the Fourth Circuit relied in *Mubdi*, *Brown*, and *Jones* to distinguish *Sowards*—namely, (1) the corroborating estimation of a second officer and (2) the lack of any reason to doubt the officers' abilities to make the challenged estimations—are absent here. Here, (1) Budden alone observed Defendant's vehicle's windows before stopping Defendant's vehicle and (2) Budden's suspicion that the windows were illegally tinted was later shown by the light meter to be unfounded. Defendant argues that these considerations combine to render Budden's suspicion unreasonable for Fourth Amendment purposes in the absence of the "additional indicia of reliability" discussed in *Sowards*.

The court first addresses the fact that Budden's suspicion that Defendant's vehicle was noncompliant with N.C. Gen. Stat. § 20-127 was ultimately shown to be unfounded. [DE-33 at 3] As mentioned above, Budden estimated when he initiated the traffic stop that Defendant's vehicle's windows allowed 25% light transmission and thus were not compliant with N.C. Gen. Stat. § 20-127(b)(1)'s 35% requirement, but the light meter ultimately showed that Defendant's windows allowed 37% light transmission and therefore were legal. Defendant argues that these facts establish that Budden was unable to effectively estimate the light transmission allowed by a tinted window, and that this inability rendered

10

the traffic stop unreasonable within the meaning of the Fourth Amendment. [DE-33 at 4–5, 7 ("Here the record does more than demonstrate a reason to doubt the officer's ability to estimate window tint, it conclusively establishes his *inability* to estimate window tint.")]

But the Supreme Court has said that "[t]o be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them fair leeway for enforcing the law in the community's protection." *Heien*, 574 U.S. at 60–61 (internal quotation marks and citation omitted). "The limit is that the mistakes must be those of reasonable men." *Id.* at 61 (internal quotation marks and citation omitted).

The court concludes that Budden's mistake was that of a reasonable man. First, the difference between Budden's estimation that Defendant's windows might be illegally tinted[3] and the reality that they were not fails to convince the court that Budden was unable "to estimate window tint with a reasonable degree of accuracy" or to reasonably suspect that Defendant's vehicle was not compliant with N.C. Gen. Stat. § 20-127. *Jones*, 500 F. App'x at 218. Without question, Budden was not required to be certain that Defendant's vehicle's windows were illegal in order to stop the vehicle to investigate whether that was the case. *See United States v. Arvizu*, 534 U.S. 266, 277 (2002) ("A determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct."); *Jones*, 500 F. App'x at 218 (no error because officers had reasonable suspicion that windows were "*potentially* illegally tinted" (emphasis added)). Second, Budden testified at the hearing on Defendant's motion to suppress that he: (1) was field-

---

[3] While Defendant focuses upon Budden's testimony that he estimated that Defendant's windows allowed only 25% light transmission, Budden did not stop Defendant's vehicle based upon suspicion that the windows allowed 25% light transmission, but rather based upon suspicion that they were not compliant with N.C. Gen. Stat. § 20-127, i.e., allowed less than 35% light transmission. It is therefore the 35% threshold, rather than Budden's 25% estimation, that controls the court's determination of the reasonableness of Defendant's seizure. But for the record, were the 25% estimation to control, the court would find a 12% mistake regarding window-tint percentage to be within the bounds of reasonableness as well, and would not change its conclusion that Budden had reasonable suspicion justifying the challenged traffic stop.

11

trained in enforcing window-tint violations at the beginning of his ten-year career in law enforcement; (2) has stopped hundreds of vehicles on suspicion of violating window-tint laws; and (3) has been correct about suspected window-tint violations in almost every instance. While such training, experience, and prior accuracy alone would likely not render reasonable a law-enforcement officer's decision to stop any vehicle to investigate suspicion, e.g., that windows ultimately measured as allowing 99% light transmission might allow less than 35% light transmission, in this case the light meter showed that Defendant's windows allowed 37% light transmission, a mere 2% above the legal threshold. Thus, rather than "conclusively establish[ing Budden's] *inability* to estimate window tint" as Defendant suggests [DE-33 at 7], the court concludes that the light meter's reading—which confirmed that Defendant's vehicle's windows were on the margins of illegality—tends to confirm Budden's *ability* to estimate window tint with reasonable accuracy. The more closely that behavior—while legal—approximates illegal behavior, the more reasonable suspicion regarding and investigation of that behavior by law enforcement becomes. Thus, while doing so was not in and of itself illegal, that Defendant had his windows tinted to within 2% of N.C. Gen. Stat. § 20-127(b)(1)'s 35% threshold certainly rendered more reasonable Budden's suspicion that Defendant's windows were illegally tinted, and rendered reasonable Budden's mistake. Indeed, if there is such a thing as a reasonable mistake regarding whether a window is illegally tinted, a 2% error must fall within the bounds of reasonableness. Finally, like the district court in *Jones*, the court has itself reviewed the video evidence submitted by the Government and finds that Defendant's windows "did in fact appear to be dark" at the time of the stop and were "dark enough" for Budden to reasonably suspect that they were "potentially illegally tinted" and therefore to stop Defendant's vehicle to "check out" the windows with a light meter. *Jones*, 500 F. App'x at 218. In sum, because Defendant's vehicle's windows appeared to be "potentially illegally tinted[,]" and were later shown to be only marginally legal, the court concludes that Budden's mistake did not render the traffic stop unreasonable for Fourth Amendment purposes.

That leaves the fact that Budden's suspicion was uncorroborated by a second officer. As mentioned above, there is no widely-available technology or generally accepted method that allows law-enforcement officers to reliably measure a moving vehicle's windows' light-transmission percentage. Therefore, Defendant essentially argues that (1) a law-enforcement officer cannot by himself gain reasonable suspicion that a vehicle is in violation window-tint provisions, and (2) a second officer must always be called to corroborate the officer's suspicion before the vehicle is stopped for investigative purposes, or else the Fourth Amendment is violated.

The court rejects this argument, and concludes that Budden's estimation that Defendant's vehicle's windows might violate N.C. Gen. Stat. § 20-127 alone provided the requisite reasonable suspicion to support the challenged traffic stop. In another case in which a criminal defendant challenged the seizure of his vehicle on the basis of a suspected window-tint violation, the Ninth Circuit held that the lone officer's naked-eye observation and resulting estimation that the window there at issue was illegally tinted was sufficient to support *probable cause* to stop the vehicle,[4] quoting the California Court of Appeal as "aptly" stating:

> We don't call upon the officers to be scientists or carry around and use burdensome equipment to measure light transmittance, nor do we expect them to discuss the sufficiency or insufficiency of the light transmittance as if they were an expert witness on the subject. Rather . . . if an officer forms an opinion in a common sense examination of a vehicle that . . . light is obstructed in the fashion contemplated by the statute, such evidence will be sufficient to support conviction . . . if the trial court believes the officer . . . .

---

[4] Although the *Wallace* court discussed the Fourth Amendment probable-cause standard because of a purported waiver issue, *see Wallace*, 213 F.3d at 1219 n.3, the fact that the lone officer's naked-eye observations and suspicion of a window-tint violation were held to have supported probable cause to stop the vehicle at issue in that case supports *a fortiori* the court's conclusion that Budden's naked-eye observation and suspicion were sufficient to satisfy the "less demanding" reasonable-suspicion standard in the absence of a second officer's corroborating opinion. *Wardlow*, 528 U.S. at 123 ("[R]easonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence.").

13

*United States v. Wallace*, 213 F.3d 1216, 1220 (9th Cir. 2000) (quoting *People v. Niebauer*, 214 Cal. App. 3d 1278, 263 Cal. Rptr. 287 (1989)). The *Wallace* court accordingly reversed the district court's grant of the defendant's motion to suppress. *Id.* The *Wallace* defendant appealed to the Supreme Court, which denied the defendant's petition for a writ of certiorari. 531 U.S. 974 (2000).

So here, the court credits Budden's testimony that he: (1) observed Defendant's vehicle, "notice[d that] the window tint was dark[,]" and "couldn't see anything inside the vehicle" [Tr. 22]; and (2) accordingly suspected, based upon his training and experience (described above), that "light [wa]s obstructed [by Defendant's windows] in the fashion contemplated by" N.C. Gen. Stat. § 20-127(b)(1), *Wallace*, 213 F.3d at 1220. Budden's testimony demonstrates a "particularized and objective basis for suspecting the particular person stopped of criminal activity" that in the totality of the surrounding circumstances provided reasonable suspicion that Defendant was potentially violating N.C. Gen. Stat. § 20-127. *Glover*, 140 S. Ct. at 1187 (internal quotation marks and citations omitted). And following *Wallace*, the court concludes that Budden's reasonable suspicion, although uncorroborated by a second officer and ultimately shown to be unfounded, justified Budden's decision to stop Defendant's vehicle to investigate and thereby to confirm or deny his suspicion. This is true notwithstanding the absence of the "additional indicia of reliability" contemplated by *Sowards* that Defendant urges were indispensable.

## IV. Conclusion

For the foregoing reasons, the court concludes that Budden's seizure of Defendant's vehicle was not unreasonable within the meaning of the Fourth Amendment, and DENIES Defendant's motion to suppress unspecified evidence obtained as a result of the seizure.

SO ORDERED this the 12th day of May, 2021.

Richard E. Myers II
RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE